The Hon. Jamal N. Whitehead

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| OneAmerica Votes, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Donald J. Trump, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 2:26-cv-04223-JNW<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Dkt. No. 12) |



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## INTRODUCTION

Plaintiffs respectfully submit this supplemental brief in support of their pending Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. No. 12 ("Mot."), and in accordance with the Court's November 3 Minute Order, Dkt. No. 17. This case warrants immediate relief. *None* of the judicial orders entered up to this point—in *SEIU v. U.S. Department of Justice*, No. 26-7303 (9th Cir. Nov. 3, 2026) ("*SEIU* Reinstated Panel Order"), or otherwise—address the imminent, irreparable injury that Plaintiffs and their members face due to Defendants' unlawful demand that *Washington election officials* set aside and not count certain ballots. *SEIU* addresses only one claim upon which the Plaintiffs here seek emergency preliminary relief, and its analysis of that claim addresses only a limited (and very different) record of intrusion into state affairs. *See SEIU* Reinstated Panel Order at 6. The court, while suggesting that a mere *request* does not violate the Constitution, reaffirmed the fundamental principle that federal officials may *not* lawfully make a *demand* of State election officials. *Id.* (citing *Printz v. United States*, 521 U.S. 898, 935 (1997), and *United States v. California*, No. 26-7231, 2026 WL 3268272, at *3 (9th Cir. Oct. 30, 2026) (per curiam) ("*California III*"), *appl. for inj. pending appeal denied*, No. 26A624, 2026 WL 3301004 (U.S. Nov. 2, 2026)). But the Washington-specific record in this case demonstrates that is exactly what Defendants are doing here, and will continue to do, absent judicial relief. As one Defendant proclaimed: "I think we're going to continually demand that these are segregated. We want to make sure these ballots aren't counted[.]" Ex. Q at 8:19–9:2. Plaintiffs respectfully reiterate their request for an immediate temporary restraining order and preliminary injunction.



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## BACKGROUND

Plaintiffs are three organizations that conduct civic engagement with thousands of their members and constituents in Washington State. *See* Mot. at 24–26 (citing Exs. A, B, C). They seek relief on behalf of their organizational interests and the associational rights of their members, both of which are put at risk by Defendants' threats against Washington and local election officials. Defendants continue to demand that Washington set aside the ballots of purported noncitizens based on faulty lists that are especially likely to misidentify the naturalized citizens Plaintiffs represent and serve. *See* Mot. at 14 (citing Exs. A, B, C). Accordingly, Plaintiffs require—and continue to seek—an order that enjoins Defendants from coercing any Washington state or local election official to remove voters from the rolls or prevent their ballots from being counted. *See* Compl. at 39–40.

As detailed in Plaintiffs' Motion, two matters in California stem from similar demands by Defendants in that State, but resulted in orders that do not reach Plaintiffs here. First, on October 13, 2026, DOJ demanded that California set aside ballots of purported noncitizen voters on federal lists. *See* Mot. at 9. California refused, in part due to the glaring inaccuracies of those lists. *See id.* at 10. DOJ brought an action against the State on October 15 in the Central District of California, and the district court denied DOJ's motion for a temporary restraining order on October 28. *United States v. California*, No. 2:26-cv-12025-DOC-ADS, 2026 WL 3252428, at *4 (C.D. Cal. Oct. 28, 2026) ("*California II*"). The Ninth Circuit then denied DOJ's request for an injunction pending appeal, holding that DOJ had no authority to make such demands of the State. *See California III*, 2026 WL 3268272. Hours after that decision was issued, DOJ applied to the U.S. Supreme Court, which also denied DOJ's





ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

application for an emergency injunction. Order, *United States v. California*, No. 26A624 (U.S. Nov. 2, 2026). In DOJ's application, which concerns only its efforts in California, DOJ argued that lower courts erred in holding that the federal government lacks authority to demand that state and local election officials set aside ballots based on lists of purported noncitizen voters. *See* Mot. at 2, 10–12 (discussing *California* litigation). The upshot of this case is that California is not required to set aside ballots according to DOJ's demands.

Second, on October 30, in the Northern District of California, a district court entered a nationwide temporary restraining order against federal defendants based on allegations that some 20,000 noncitizens remained on California's voter rolls. *See* Mot. at 14 (citing Order at 2, *SEIU v. U.S. Dep't of Just.*, No. 3:26-cv-12800-TLT (N.D. Cal. Oct. 30, 2026), Dkt. No. 26) ("*SEIU* District Court Order"). Last evening, a three-judge panel of the U.S. Court of Appeals for the Ninth Circuit stayed that temporary restraining order. *See* Order, *SEIU v. Dep't of Just.*, No. 26-7303 (9th Cir. Nov. 2, 2026), Dkt. No. 24.1 ("*SEIU* Panel Order"). Hours thereafter, the *en banc* court vacated the panel's stay order, ordering that the case be reheard by an 11-judge *en banc* panel. *See* Order, *SEIU v. Dep't of Just.*, No. 26-7303 (9th Cir. Nov. 2, 2026), Dkt. No. 31.1. This morning, a majority of the 11-judge *en banc* panel voted 6-5 to reinstate the three-judge panel's November 2 stay order, leaving the Northern District's temporary restraining order stayed for now. *See SEIU* Reinstated Panel Order. This afternoon, the *SEIU* plaintiffs moved for full court *en banc* reconsideration by the entire Ninth Circuit. *See* Pet. for Full Court En Banc Reh'g, *SEIU*, No. 26-7303 (9th Cir. Nov. 3, 2026), Dkt. No. 35.1; *see also* 9th Cir. R. 35-3. The Ninth Circuit directed the defendants to file a response by 5:00 p.m. Pacific Time this evening, indicating that it may take up the SEIU

Reinstated Panel Order for reconsideration. *See* Order, *SEIU*, No. 26-7303 (9th Cir. Nov. 3, 2026), Dkt. No. 36.1.

In addition to these California cases, two orders issued yesterday out of the U.S. District Court for the District of Columbia. Order, *Coal. for Humane Immigrant Rts. v. DHS* ("*CHIRLA*"), No. 1:26-cv-3072-JEB (D.D.C. Nov. 2, 2026), Dkt. No. 48; Mem. Op., *League of Women Voters v. DHS* ("*LWV*"), No. 1:26-cv-3602-TSC (D.D.C. Nov. 2, 2026), Dkt. No. 31. The plaintiffs in each of those cases asserted injuries similar to those raised by Plaintiffs here. *Compare CHIRLA*, slip op. at 5–6, 10–11 ("Groups that engage in similar voter-registration and -mobilization work regularly have standing to challenge policies that make that work more difficult."), *LWV*, slip op. at 11–13, 15–17 (holding that an organization demonstrated standing where "its members are likely to suffer an imminent injury in fact from the confusion, fear, and chilling caused by further transmission of voter data"), *with* Mot. at 24–26; *see also* Mem. Op. at 22–23, *DSCC v. Trump*, No. 1:26-cv-03674-JEB (D.D.C. Nov. 2, 2026), Dkt. No. 34,(holding that political party organizations and voter that was not on Defendants' list of purported noncitizens did not have standing, but acknowledging that "an organization with newly naturalized citizen members ha[s] organizational standing" because it was "actively diverting its resources to respond to a here-and-now injury").

The upshot of these cases is that federal officials are currently enjoined from (1) "issuing demands to *California* election officials seeking to compel the segregation of ballots, or other deviations from existing state elections procedures, based on voters' inclusion on the lists of suspected non-citizens," *CHIRLA*, slip op. at 19 (emphasis added), and (2) "*further* disclosing, transmitting . . . lists of potential or actual non-citizen voters or registered voters,





ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

to any State, county, municipal, or other local official," Order at 1, *LWV*, No. 1:26-cv-3602-TSC (D.D.C. Nov. 2, 2026), Dkt. No 30 (emphasis added). None of these cases provides Plaintiffs the protection or the relief they seek in *this* case in the teeth of the ongoing election.

## ARGUMENT

### I. The limited holding of the *SEIU* Reinstated Panel Order is readily distinguishable.

The *SEIU* Reinstated Panel Order—assuming it stands—does not control the outcome of Plaintiffs' motion for a temporary restraining order and preliminary injunction. Aside from not addressing several of Plaintiffs' claims on the merits, the Order's discussion of the Elections Clause and separation of powers is inapplicable on this Washington-specific record—and Plaintiffs seek far narrower, Washington-specific relief.

#### A. The *SEIU* Reinstated Panel Order did not address the bulk of the claims presented in Plaintiffs' Motion.

The SEIU Reinstated Panel Order addressed only the *SEIU* plaintiffs' claims related to Section 11(b) of the Voting Rights Act and the Elections Clause, even though the *SEIU* plaintiffs had also moved for injunctive relief on the grounds that the federal government's demands likely also violate the Fifth and Tenth Amendments and the Administrative Procedure Act, *see* Mot. at 14 & n.3 (discussing *SEIU* litigation). The Order did not address whether the federal government's demands that state and local election officials segregate ballots based on a purported list of noncitizens violate the Tenth Amendment's vertical separation of powers or anticommandeering doctrine, the Fifth Amendment's right to vote or the right to fundamentally fair elections, or the Administrative Procedure Act, *see SEIU*





ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Reinstated Panel Order at 4–6—all claims that Plaintiffs bring here, *see* Mot. at 15 n.4, 19–23. Nor did the Ninth Circuit's order address the right-to-vote or fair-elections claims that Plaintiffs advance here, *see* Mot. at 22–23. Accordingly, the *SEIU* Reinstated Panel Order does not in any way limit or impede this Court's consideration of Plaintiffs' motion for a temporary restraining order or preliminary injunction as to those claims.

### B. The *SEIU* Reinstated Panel Order's holding as to the likelihood of success on the merits of the Elections Clause claim is distinguishable.

The only substantive area of overlap between Plaintiffs' Motion in this case and the claims discussed in the *SEIU* Reinstated Panel Order is the claim that the federal government's actions violate the Elections Clause of the U.S. Constitution. The Order is readily distinguishable because Defendants' unlawful intrusion into Washington's election-administration authority is more pointed and forceful than the nationwide claims of intrusion made on the *SEIU* record. It described the limited question before it as "only whether the Government can make . . . a *request* in the first place," and concluded the *requests* reflected in the *SEIU* record did not demonstrate anything that "*actually* disturb[ed] the states' regulation of their own elections." *SEIU* Reinstated Panel Order at 6 (emphases added).[1] The record in this case, however, demonstrates that Defendants are engaged in a campaign to make *demands* of *Washington* officials, with palpable effects of *intimidation*, including—to use

[1] Analysis by two concurring judges in the *SEIU* Reinstated Panel Order emphasizes that development of concrete evidence of intimidation could ultimately change the outcome of the court's consideration of the merits. The judges also acknowledged that "many of the positions taken by the federal government in its recent communications to state election officials may have little merit." *SEIU* Reinstated Panel Order at 1 (Miller, J., concurring, joined by Bennett, J.).



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Defendant Serrano's own phrase—by putting them in a "pickle" between "complying" with their federal requests and "comply[ing]" with conflicting state procedures. Ex. Q at 8:7–13. The *SEIU* Reinstated Panel Order has nothing to say about *this* record of intrusion upon State authority. *See SEIU* Reinstated Panel Order at 6 (reaffirming that the federal government "may request, but not compel, the states to enact or enforce a federal program") (citing *Printz*, 521 U.S. at 935).

***1. The October 26 directive.*** Start with the Washington-specific evidence. On October 26, Defendants Floyd and Serrano sent Secretary Hobbs a list of 405 named individuals whom they described as people who "are or were noncitizens." Holmes Decl. ¶ 17; Ex. D-5 at 1. The letter made clear Defendants' "expectations" that the Secretary review the list "within 24 hours of receipt of this letter," or else face legal action. Holmes Decl. ¶ 20. The letter directed that, "[i]f a ballot for any individual on the list has been or subsequently is return[ed]," the State must "instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined." *Id.* And, even as Defendants acknowledged that "our offices do not enforce State law," they warned that "we do make criminal referral to our state counterparts" and threatened that "we do expect a prompt response from your office." *Id.* ¶ 21.

***2. Public announcement in Seattle.*** Defendants also immediately took the bully pulpit to put election officials across the State on notice of their demands. At a press conference in Seattle, Defendant Floyd emphasized: "Now that the state is on notice, it is incumbent upon state officials to make sure they are counting only legal votes." Ex. P at 1. He warned that "[k]nowingly assisting those who are voting illegally is a crime," and that "we *will criminally*

*prosecute* those who vote illegally and those who assist others in voting illegally." *Id.* at 2 (emphasis added). Asked directly whether county election officials could be charged for processing the ballots of voters on the list, he refused to back down on his threats, responding: "It is illegal under section 611 for non-citizens to vote. *Anyone that assists someone in voting illegally would be also guilty of that crime under the aiding abetting theory, just like any other crime*. So if you conspire, if you aid and abet someone else in committing a crime, then you could be guilty of a crime as well." *Id.* at 8 (emphasis added).

***3. Radio statements.*** Defendants did not stop there. They repeated their warnings on the airwaves. Defendant Floyd told listeners that State officials were "now . . . on notice. You've got notice that these people are here, they're not citizens, they've voting [sic], what are you going to do about it?" Ex. R at 4:3–6. He tied that notice directly to criminal liability: "Now that we've put them on notice, it raises the bar a little bit, because it is a violation of . . . 18 U.S.C. 611 to vote, you know, illegally when you're not a citizen and if someone were to cooperate or to aid and abet or to assist someone in voting illegally, then they—they could be guilty of a crime as well." *Id.* at 8:22–9:6.

When Secretary Hobbs declined to comply with Defendants' demands, Defendant Serrano made clear that Defendants would continue to pressure Washington officials. Serrano stated that Defendants would *not* "let it go by the wayside," and instead they would "start working with county auditors, which now places the county auditors in a position do I potentially violate this law because Steve Hobbs will not do his job." Ex. Q at 7:3–8. And he acknowledged what that would mean for those officials: "if we start asking them to do it and they start complying, now we're going to ask them to put themselves in a pickle, do we comply



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

with the federal subpoena or do we comply with state law. And as you can imagine, the DOJ demanding information from them, that's got its own subject to federal penalties; right?" *Id.* at 8:7–13. Defendants then made their objective explicit: "I think we're going to continually *demand* that these are segregated. We want to *make sure these ballots aren't counted* and if ultimately we have to send 39 letters -- letters to 39 auditors over the next couple days we can do that." *Id.* at 8:19–9:2 (emphases added).

Defendants have not been coy about their coercive efforts to interfere with the administration of Washington's elections. These Washington-specific statements cannot, in any view, be described as a mere "request."[2]

***4. Specificity of Washington list.*** The demand that Defendants have made of Washington also differs in kind from the California letters that the *SEIU* Reinstated Panel Order addressed. In California, DOJ asked State officials to review a list of some 20,000 registrants who it "believe[d]" were "likely noncitizens." Ex. L. In Washington, Defendants delivered a targeted list of 405 named individuals whom they publicly described as "known to be non-U.S. citizens, full stop." Ex. Q at 3:6–9.[3] They insisted this was "adequate information" for Secretary Hobbs to tell "each county auditor saying hey, this individual with this birthdate is a known non-citizen, please segregate their ballot." *Id.* at 6:1–5. Especially when considered against the backdrop of Defendants' letter and supplemental public statements, Defendants' actions constitute a demand that state officials take specific action

---

[2] *Cf. Pickle*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/pickle (last visited Nov. 3, 2026) (defining "pickle" as "a difficult situation; plight").

[3] That claim, of course, has already fallen apart. *See* Mot. at 13–14.



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

against specific voters' ballots, backed by the threat of numerous consequences including criminal prosecution.

***5. How Washington officials understand Defendants' statements.*** The record in this case further confirms that Washington election officials in fact "clearly understood that the purpose" of Defendants' threats was "to intimidate." Holmes Decl. ¶ 11; *see id.* ¶ 30. In a declaration submitted in support of Plaintiffs' Motion, the Director of Washington Elections attested that he fears that he, his staff, Secretary Hobbs, "and election administrators around the state could become targets of a . . . criminal probe." *Id.* ¶ 28. And—consistent with Defendants' stated goal—he has explained that these threats force administrators "to choose between executing their duties faithfully in accordance with state or federal law or preserving their own financial interests and freedom from a baseless criminal probe." *Id.* ¶ 31. Secretary Hobbs, for his part, has stated that, without individualized proof of ineligibility, "it would be both irresponsible and illegal for election officials to decline to process a registered voter's ballot" under state law, *id.* ¶ 27; Ex. D-6, yet Defendants admit that they are putting election officials in precisely that dilemma.

***6. Ongoing public escalation.*** Finally, Defendants continue to escalate their threats. Just today, the Secretary of Homeland Security issued a public statement making clear that Defendants' unlawful campaign of intrusion does not stop with election day. In an appearance on Fox News, he stated:

> [We] will be looking at the registers and all the voting and all those that voted after the election—and making sure that no one voted illegally, because even past this election, it is still DHS's job to make sure that this was an election that was handled by the federal laws . . . . After this election we'll be gathering all the data,

> we'll be gathering the voting logs, and we'll be going through those and making sure that no illegals voted . . . .[4]

In sum, unlike the record considered in the *SEIU* Reinstated Panel Order, the record at issue here clearly demonstrates that Defendants are engaged in an unlawful—and escalating—campaign of intimidation that intrudes upon Washington's election authority under the Elections Clause and fundamental separation of powers principles. Plaintiffs are thus likely to succeed on the merits of that claim, too.

### C. Plaintiffs in this case seek far narrower relief than the broad relief questioned by the Ninth Circuit.

This action is further distinguished by the significantly narrower scope of relief sought by Plaintiffs. Unlike the relief granted in the *SEIU* District Court Order, Plaintiffs here seek only to enjoin Defendants' specific threats and demands directed towards election officials in Washington that are currently causing Plaintiffs and their members irreparable harm. Such relief is not foreclosed by the *SEIU* Reinstated Panel Order.

The *SEIU* District Court Order purported to enjoin Defendants from transmitting to States further demands to segregate the votes of lists of purported noncitizens *nationwide*, to require Defendants to "inform the Court of any pending search warrant applications, grand jury subpoenas, or other demands to access election materials or ballots" in any state, Order at 7, *SEIU* District Court Order at 26, and to require that Defendants inform States and local governments to which demands had already been made that the "demands and threats of

[4] @EricLDaugh, X (Nov. 3, 2026), https://x.com/EricLDaugh/status/2117729928095412303 (quoting the Secretary and reporting news clip). This Court may take judicial notice of Defendants' public statements, to the "press" or otherwise. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 733 (W.D. Wash. 2025) (collecting cases).



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

prosecution . . . reflected in those letters have been enjoined." *SEIU* Reinstated Panel Order at 2. None of these features of the *SEIU* District Court Order apply here.

As outlined in their proposed order, Dkt. No. 12-27, Plaintiffs seek only to enjoin Defendants from further commanding Washington election officials to set aside voters' ballots and from threatening election officials with criminal penalty or investigation for failing to comply with Defendants' demands. Such narrow relief is consistent with the Ninth Circuit's holding, just last Friday, that no statute "authoriz[es] the Department of Justice to take charge of or intervene in a state's administration of an ongoing election." *California III*, 2026 WL 3268272, at *4. Unlike the *SEIU* plaintiffs, Plaintiffs here do not seek information related to search warrants, subpoenas, or other demands for election materials, nor do they seek to affirmatively require Defendants to provide notice to all elections officials that the prior demands have been enjoined.

Other flaws that the Ninth Circuit found with the *SEIU* District Court Order are inapplicable here, too. For example, the *SEIU* Reinstated Panel Order concluded that the district court's order intruded into "core executive functions" by enjoining Defendants from making "requests" "that did not actually disturb the states' regulation of their own elections." *SEIU* Reinstated Panel Order at 6. But here, Plaintiffs do not seek to enjoin simple "requests," but rather demands under threat of criminal prosecution—precisely the kind of federal action that the *SEIU* Reinstated Panel Order recognized was held unlawful in *California III*, 2026 WL 3268272, at *3. *See SEIU* Reinstated Panel Order at 5 (recognizing that *California III* concluded a State cannot be required to "adopt the ballot-sequestration process" demanded by the government here). In addition, the *SEIU* Reinstated Panel Order relied in part on the





ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

17-day duration of the district court's order to determine that the order could not stand. *SEIU* Reinstated Panel Order at 4. But, consistent with Federal Rule of Civil Procedure 65(b)(2), Plaintiffs do not request a temporary restraining order that will extend beyond 14 days. Finally, the *SEIU* Reinstated Panel Order found fault with the order "prohibiting the Department of Justice from expressing its views about criminal statutes." *SEIU* Reinstated Panel Order at 1 (Miller, J., concurring, joined by Bennett, J.). But, again, Plaintiffs seek no such relief here.

## II. This Court can and should enter Plaintiffs' requested relief as quickly as possible.

The passage of election day does not render Plaintiffs' requested relief any less urgent. Washington election officials will be processing ballots and preparing for certification of the election results over the next *four weeks*: Washington's county-level certification of the 2026 general election results occurs on November 24, 2026, *see* Wash. Rev. Code § 29A.60.190; Wash. Admin. Code § 434-262-030, and state-level certification must occur by December 3, 2026, *see* Wash. Rev. Code § 29A.60.250.

There is no indication that Defendants' intimidation campaign will cease after the polls have closed. *See supra* Argument § I.B. Earlier this afternoon, Department of Homeland Security Secretary Mullin proclaimed on television that "[a]fter this election we'll be gathering the voting logs, and we'll be going through those and making sure that no illegals voted." *See supra* Argument § I.B n.4. Plaintiffs and their members will continue to face the risk of irreparable injury until ballot processing and certification for the 2026 general election is complete.



ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## CONCLUSION

Accordingly, Plaintiffs reiterate their request that this Court enter a temporary restraining order as soon as possible, as well as a preliminary injunction.

Dated: November 3, 2026

Respectfully submitted,

/s/ Abha Khanna
**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

**LUCAS W. LALLINGER***
DC Bar No. 1046778
**HARLEEN K. GAMBHIR***
DC Bar No. 1781869
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 935-1148
llallinger@elias.law
hgambhir@elias.law

*Attorneys for Plaintiffs*

**Admitted Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs OneAmerica Votes, Latino Community Fund of Washington State, and the United Food and Commercial Workers International Union, certifies that this memorandum contains 3,908 words, in compliance with the Court's November 3, 2026 Minute Order, Dkt. No. 17.

Dated: November 3, 2026

*/s/ Abha Khanna*

**ABHA KHANNA**
WA Bar No. 42612
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

*Attorney for Plaintiffs*